The judgment of the court was pronounced by
Preston, J.
By virtue of an execution in a suit of Parker against John U. Hewitt, the plaintiff in this suit, a quarter section of land was sold by the sheriff of the parish of Ouachita, on the 15th of May, 1841, and the defendant became the purchaser for the sum of seventy-two dollars, payable in a bond at twelve months’ credit.
This suit is brought to annul the sale, on the ground that the formalities of law necessary to make a valid forced alienation of the properly were not complied with by the sheriff.
The plaintiff further alleges, that the defendant was the deputy sheriff, and made the sale to himself. If this allegation had been proved, the district court would no doubt have annulled the sale on that ground, as was done in the case of McCluskey against Webb, 4 R. R. 204, 205; and we would have approved of the decision. No proof, however, has been offered that the defendant made the sale, and although the deputy acts for the sheriff in selling, and cannot therefore buy himself, yet the sheriff in selling does not act for his deputy, and we know of no law or principle which prohibits the deputy from buying at a sale made by the sheriff himself.
The plaintiff alleges further, that there was fraud and collusion in the sale ; and it is stated ^that the deputy was the brother of the sheriff. There is no proof in support of these allegations. We regret, however, that such sales should take place, and become matter of litigation in court, as, however honestly made, they subject the acts of public officers to suspicion and remarks, as thrown out in this suit, which should always, if possible, be avoided.
The position of plaintiff’s counsel, that when a sheriff’s sale is attacked on the ground that the forms of law were not complied with, the onus is thrown on the party claiming under the sale to prove the requisite formalities must be qualified. If he shows by thq sheriff’s return a substantial compliance with the requisites of law, it is incumbent on the plaintiff who attacks the sale to show that the forms were not strictly observed. And further, what, is necessarily, or perhaps *641 reasonably to be inferred from the sheriff’s return, may be presumed until the contrary is shown. 2 R. R. 468. 19 L. R. 309. 11 R. R. 322.
It is alleged, that no notice of seizure was given with a list of the property seized. The sheriff returns, that he demanded property from the defendant in the execution, and that he pointed out the land in controversy. Therefore, it was unnecessary to show a notice of seizure, with a list of the property seized.
It is alleged, that no notice was given to the defendant in execution to appoint an appraiser, and that no legal appraisement was made. The sheriff returns, that he offered the property for sale “after having the same appraised.” We are bound to presume it was a legal appraisement, as the contrary is not proved. The plaintiff contends that the property was not advertised for thirty days before being offered for cash, because seized on the 22d of March, and exposed for sale on the 24th of April following. As the defendant in execution pointed out the property to be sold, there was no reason why the sheriff should not immediately advertise it; and by so doing, he was able to advertise it fully thirty days between the 22d of March and the 24th of April fallowing. The three days notice of seizure before advertisement were waived by pointing out the property to be advertised.
The sale, at twelve months’ credit, was advertised at the court-house door, and in the newspaper called The Monroe Olive Branch. It is contended that it should have been advertised at two other public places in the parish.
The Code of Practice directed the advertisements to be made at the courthouse of the parish, and to be inserted in a newspaper, in parishes where public newspapers were printed. In 1829, the Legislature directed that it should no longer be the duty of the sheriff of Ouachita to cause to be inserted in a newspaper the advertisements of his sales, but that a publication of such sales affixed at the court-house door, and at least at two other public places of the parish, should be deemed sufficient. The publication at two public places other than the court-house was thus substituted for the advertisement in a newspaper. But in 1841, the law was again changed, and it was made the duly of the sheriff of any parish in the State in which a newspaper was published, to publish all his advertisements for sales in said paper. We think the Legislature intended to supersede, by the publication in a newspaper, the affixing the advertisement at two public places in the parishes, which had been substituted for it in 1829. The Legislature cannot reasonably be supposed to have intended to subject the debtor to the expense of publications in a newspaper in addition to that of advertising the> sale at three public places in the parish.
It is said, the advertisement did not set forth that the bond to be given by the purchaser was to bear interest from the day of adjudication, at the rate allowed by the judgment. The sheriff returns, that the purchaser gave bond with security according to law. The law expressly required that it should bear the same interest with the judgment. C. P. 681. It is to be presumed, therefore, that the bond bore the same interest, until the contrary is proved; and that this condition was advertised. The act of 1834 declares, that the fact of the sale being made is prima facie evidence that the required advertisements were regularly made; and no proof to the contrary has been offered.
The Legislature have passed many laws to cure the immaterial informalities by means of which defendants actually endeavor to set aside judicial sales after all the trouble, expense and delays by which plaintiffs enforce their rights; and we think it the duty of courts to yield to the evident inclination of Legislative *642 wisdom on this subject, and, if possible, to render the proceedings of courts and their officers effectual and not nugatory.
This suit affords a striking example of the necessity of that course of jurisprudence. Parker commenced suit in 1839 on a due bill for $480 made in 1836. Pie employed able counsel, who prosecuted the claim with diligence, but only succeeded, in 1841, in getting a twelve months’ bond for $72, by the sale which the defendant now seeks to annul, and thereby subject the plaintiff to refund to the purchaser, in 1850, even that small sum, probably exhausted in costs. We could be induced to reverse a judgment and produce such results only by the imperative dictates of the law, but do not find ourselves obliged to do so in this case.
The judgment of the district court is therefore affirmed, with costs.